**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| **COLLINS INKJET CORPORATION** | : | |
| | : | |
| | : | **Civil Case No.: 1:13-cv-00664-MRB** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Judge Michael R. Barrett** |
| | : | |
| **EASTMAN KODAK COMPANY** | : | **Magistrate Judge Karen L. Litkovitz** |
| | : | |
| **Defendant.** | : | |
| | : | |

**PLAINTIFF'S FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiff Collins Inkjet Corporation ("Collins"), for its First Amended Complaint against

Eastman Kodak Company ("Kodak"), states as follows:

**INTRODUCTION**

1.      Kodak and Collins are the sole manufacturers of specialized ink used in Kodak

Versamark printers ("Versamark ink"). This case arises out of unlawful and anticompetitive

behavior recently undertaken by Kodak in an attempt to drive Collins out of the market of

supplying Versamark ink to consumers. This behavior includes taking the following unlawful

actions: (a) tying the sale of printheads for Versamark printers – a market in which Kodak has a

monopoly – to the sale of Versamark ink; (b) attempting to monopolize the market for

Versamark ink; (c) defaming Collins and its Versamark ink to customers and the public, and

otherwise making false, misleading or defamatory statements and misrepresentations about

Collins and its products; (d) tortiously interfering with Collins' business relationships with its

Versamark ink customers; and (e) building a false sense that Kodak has "proprietary rights" in

technology used in refurbished Versamark printheads (hereinafter "proprietary rights") that can

be asserted by Kodak to shut down Collins' ability to refurbish and sell Versamark printheads in competition with Kodak.

## PARTIES

2.     Collins is an Ohio corporation with its principal place of business at 1201 Edison Drive in Cincinnati, Ohio. From its inception until August 26, 2013, Collins Inkjet Corporation was known as Collins Ink Corporation.   Collins is in the business of manufacturing and distributing ink to commercial customers.   At present, approximately 73% of Collins' ink production by liters sold consists of Versamark ink, the manufacture and supply of which Collins has undertaken for approximately 22 years.

3.     Kodak is a New Jersey corporation with its principal place of business at 343 State Street in Rochester, New York.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337; diversity jurisdiction under 28 U.S.C. § 1332 in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states; as well as jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. §§ 1338(a), 2201, and 2202.

5.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22. A substantial part of the events giving rise to the claims occurred and/or a substantial part of the property that is the subject of this action is located within this District.

## INTERSTATE COMMERCE

7.     As alleged below, Kodak has engaged in antitrust violations, and related causes of action, that have been within the flow of, and have substantially affected, interstate and foreign trade and commerce.  Kodak's practices at issue here are being undertaken as part of a global strategy directed by, and the benefit ultimately inuring to, Kodak in the United States.  Kodak's practices have impaired the flow of interstate and foreign commerce by reducing the quality of, and increasing the price of, the products sold in the commercial ink and refurbished printhead markets described below, and have otherwise restrained competition as further described below. The effect of these practices on Collins is worldwide, with the ultimate injury to Collins felt in the United States.

## FACTUAL BACKGROUND

### *Versamark Printers*

8.     Kodak is the sole manufacturer of Kodak Versamark printers – reputed to be the fastest continuous ink jet printers available.  These printers are used by some of the largest commercial printing companies in the world, who have made substantial investments in their Versamark printers.  A typical Versamark printer costs in excess of $200,000.00, and is often attached by special configuration to presses that can cost in excess of $10,000,000.00.  Larger companies may own hundreds of Versamark printers.  Many of the Versamark printers installed at customers of Collins have been in operation for a decade, and some for as long as twenty years.

9.     For example, Collins has supplied ink for years to companies like R.R. Donnelley and Quad Graphics, the two largest printing companies in the United States.  Upon information

and belief, both R.R. Donnelly and Quad Graphics have over three hundred Versamark printers of different sizes with an original cost in excess of $75 million.

10.     Versamark is a significant and important part of Kodak's commercial printing business, and has been so for years.

11.     Upon information and belief, there are between 300-500 customers worldwide who own Versamark printers, many located in the United States.

12.     A critical component of a Versamark printing system is the printhead, manufactured solely by Kodak. A printhead – the component through which the ink "jets" out to create the desired image – has a limited useful life before it must be replaced. Typically, a printer will have from two to as many as sixteen printheads installed in line on a printing press. Larger companies may own hundreds of Versamark printheads.

13.     Versamark printers are most efficient when run on an almost continuous basis, and printheads may last generally between 800-3000 hours before they must be replaced. Customers will almost always keep some extra printheads available, and will send printheads that must be replaced to Kodak, receiving a "refurbished" printhead in return. A refurbished printhead is one that has been repaired, generally in part with replacement of key components. Versamark customers must purchase refurbished printheads quickly and on a regular basis, and Kodak currently is the only company that is able to perform this critical service. A Versamark printing system without a printhead cannot print. The cost of lost production time on a per hour basis is generally between $1,000 and $3,000 per hour, and additional costs or penalties may be incurred if a printing job cannot be performed on a timely basis for the ultimate customer.

14.     Another cost of running a Versamark printer, although generally a lesser cost, is specialized Versamark ink. Ink used in Versamark printers is formulated specifically for

Versamark printers. Other ink is not a substitute. If Versamark ink is unavailable a customer does not and cannot "make do" with other ink; they will wait until an appropriate Versamark ink is available.

15. Collins and Kodak are the only manufacturers of ink for Versamark printers worldwide. Upon information and belief, at one point Kodak employed a toll manufacturer in Japan to manufacture Versamark ink according to Kodak specifications for distribution within that country, but does not do so now.

**Kodak's Dominance of the Versamark Printhead Refurbishing Market**

16. Owners of Versamark printers must have access to refurbished printheads on a regular basis. Kodak is currently the only source for this product; there is no other company that refurbishes printheads nor is there an established secondary market. As such, owners of Versamark printers must turn to Kodak for their refurbished printhead needs.

17. The profit margin on refurbished printheads is high. Upon information and belief, printhead refurbishing operates at between a 60 and 80 percent gross margin.

18. Despite the high profit margin, to Collins' knowledge no company in the past has ever attempted to refurbish and provide printheads for Versamark printers. There are significant and substantial barriers to entry, including: Kodak has an established and entrenched customer base; Kodak can claim a benefit from its manufacturing knowledge; Kodak can and has threatened action based upon alleged "proprietary rights"; and an entrant is at risk of Kodak making "upgrades" that threaten the compatibility of a competitor's refurbished printhead and make it difficult for a competitor to conform on a timely basis. Collins is currently attempting to enter the refurbished printhead market, but has not yet been able to do so except on a trial basis. Kodak is aware of many of Collins' activities related to Collins' attempts to enter the market.

*The Versamark Ink Market and the Relationship Between Kodak and Collins*

19.     Collins has manufactured and supplied ink for Kodak's Versamark printers since shortly after Collins formation in 1989.  Collins' founder and president formulated Versamark inks beginning in 1982.

20.     Collins competed with Kodak in the sale of Versamark ink until 2001.  By that point in time, Collins supplied approximately 50% of the Versamark ink sold.  Twelve of the largest printing companies in the world used Collins Ink as their primary supplier of Versamark inks.  This was due to a number of factors, including:  a) the quality and reliability of Collins' Versamark inks; b) the wider portfolio of Versamark inks available from Collins; and c) Collins' customer service.

21.     In 2001, Collins entered into the first of a series of contracts ("Supply and Reseller" agreements) whereby Kodak, or its predecessor in interest, was the exclusive reseller of Versamark ink from Collins.[1]  These contracts were structured to benefit the customers – by lower prices obtained through economies of scale – and to allow for both parties to walk away and resume their separate ink businesses if either party desired to in the future.

22.     Collins provided Kodak with Versamark ink both formulated by and branded as "Collins," and formulated and produced according to Kodak specifications and branded as "Kodak."  Kodak itself produced approximately 12% of the Versamark ink sold, and this was also branded as "Kodak."  The vast majority of customers who had previously dealt directly with Collins continued to order through Collins, although Kodak was technically the reseller.  Collins also provided ongoing customer service and support for Collins' Versamark inks.   Some customers dealt directly with Kodak, even when ordering Collins ink.

---

[1] From 2003 to 2008 Collins supplied ink to the prior owner of Kodak's Versamark business unit, Scitex Corporation.

23.     Beginning in 2011, Collins became concerned regarding Kodak's financial stability.  Throughout 2011, Kodak had outstanding payables to Collins of between $1.8 and $2.5 million.  Collins raised this issue a number of times and then finally sought to terminate its agreement with Kodak in October 2011.  Kodak responded by filing suit, seeking a preliminary injunction requiring Collins to continue to supply Kodak with ink  (the same ink that Kodak more recently suggested to customers is of poor quality, will void their warranties and increase their refurbishing costs to unsustainable levels).

24.     In its effort to obtain the preliminary injunction, Kodak represented to the Court that Collins' expressed concerns over Kodak's financial condition were "nothing but a bad faith pretext . . .," and that it had no intention of filing for bankruptcy.[2]  Despite these representations to the Court, Kodak filed for bankruptcy protection three months later (January 2012).

25.     Collins was finally able to terminate its agreement with Kodak effective May 2, 2012.  When Collins terminated this agreement, it became an unsecured creditor of Kodak's, owed approximately $2 million.

26.     Collins supplies a much wider variety of Versamark inks than Kodak, and has done so from shortly after it began in that market.  It manufactures thousands of custom colors as well as specialty ink, such as lottery ticket ink.

27.     Upon information and belief, Collins' Versamark ink is higher quality than Kodak's Versamark ink, both in terms of matching customers' needs and in terms of reliability and performance.  To Collins' knowledge, in the past ten years there has not been a single safety or quality issue caused by Versamark ink produced by Collins for Versamark printers.  Collins is aware, on the other hand, of a number of safety and quality issues during this time period

---

[2] *See* Kodak's Memorandum of Law in Support of its Request for a Preliminary Injunction, at 5, 7 (dated October 18, 2011) (filed in *Eastman Kodak Company v. Collins Corporation*, Civil Action No. 6:11-CV-06513 (W.D.N.Y.) (dismissed without prejudice September 4, 2012).

brought about by the use of Kodak Versamark ink in Versamark printers.  Upon information and belief, the customers view Collins' customer service as superior to Kodak with respect to Versamark ink.  For all of these reasons, Collins believes there is on balance a distinct customer preference for Collins over Kodak for Versamark ink.

**Kodak's Anticompetitive, Tortious, and Unlawful Conduct**

28.     When Collins terminated the "Supply and Reseller" agreement, Kodak realized that Collins customers were likely to either stay with or switch to Collins due to Collins' superior product and service.  Kodak, therefore, immediately implemented a variety of anticompetitive, tortious, and otherwise unlawful conduct.

29.     Kodak informed current and prospective Collins customers in May 2012 that Kodak's prices for refurbished printheads would increase if "non-Kodak inks" were used. Inasmuch as the only "non-Kodak ink" for Versamark printers is Collins ink, this was clearly directed at Collins.  The amount of the price increase was dramatic; it could not and cannot be cost-justified; and it made it economically infeasible for customers to continue to use Collins ink. Under Kodak's announced pricing schedule, Collins ink customers would pay approximately 25% more for a refurbished printhead than would Kodak ink customers.  Customers sometimes spend three to four times as much annually on refurbished printheads as they do on ink.  Collins estimated that it would often have to sell its ink at below cost, and in some cases give it away for free, to keep a customer's total cost from increasing if that customer was forced to pay the higher price for refurbished printheads under the new policy announced in the summer of 2012. Following that announcement, customers told Collins that they would like to continue to use Collins ink, but could not do so if forced to pay the higher charge for refurbished printheads.

30.    For example, one of Collins' largest customers, Customer US1,[3] stated in part in an email dated August 29, 2012:  "As you noted, Kodak has forced us into a difficult position.  I feel their policy is unfair . . . . After a great deal of financial analysis we have been forced to conclude that it [is] in our best interests to use Kodak as our most significant ink supplier. . . . I find the situation unacceptable, and unavoidable."

31.    While Kodak announced its policy in May 2012, until very recently it did not enforce the policy.  The threat alone of increased refurbished printhead costs caused some customers to switch from Collins Versamark ink to Kodak.  But other customers continued to use Collins, and Kodak did not generally enforce the upcharge for refurbished printheads using non-Kodak ink.  This was in part due to Kodak's inability to consistently produce a Kodak substitute ink of sufficient quality for customer use.  Customers were generally allowed to use Collins Versamark inks at no increased cost for refurbished printheads during the period in which Kodak attempted to develop substitute Kodak inks of comparable quality.

32.    By a Kodak letter to a customer dated July 24, 2013, however, Kodak ramped up its anticompetitive scheme.  It announced another new pricing policy, effective August 1, 2013, that creates a similar financial disincentive for Versamark customers to use Collins Versamark ink.  Kodak also announced what it termed "process changes," effective September 1, 2013, that required customers to formally identify all inks used in printheads sent back to Kodak, and required customers to include an MSDS (Materials Safety Data Sheet) for each ink used.  One of the letter's justifications for the "process changes" was:  "We are taking action on our printhead refurbishment process, as over the last 6 months our customers have experienced damaged printheads as a direct result of using 3rd-Party inks and fluids."  Collins produces the only 3rd-

---

[3] In this filing and related filings customers will be referred to by numbers rather than names.  Customers in the United States will have a "US" prefix, while customers in Europe will have an "EU" prefix.  This is being done to protect customer confidentiality.

Party Versamark ink, and there was no damage to any printhead within six months of July 2014 resulting from use of Collins' Versamark inks. Kodak continued to make this false statement in letters to customers from July 2013 forward.

33. In a November 2013 powerpoint titled "New Printhead Refurbishment Program: Notification for key customers," Kodak falsely stated that "Only Kodak can ensure that inks and fluids are optimized for performance on Kodak printing systems."

34. In a November 2013 powerpoint titled "Kodak 3rd-Party," Kodak falsely stated that "A matched system delivers a lower TCOP through more printed pages, increased print quality, and greater reliability."

35. Kodak has recently begun to enforce the new refurbished printer surcharge, even in cases where the customer was unaware of the new policy, and even in cases where Kodak has no comparable substitute ink available.

36. Kodak has also used its market power to extract agreements from customers that require the use of both Kodak Versamark ink and Kodak Versamark printheads. Upon information and belief, Kodak has also threatened certain customers with slow or no refurbished printheads if the customer continues to use Collins ink.

37. Kodak has publicly threatened customers that their warranties will be voided if they use non-Kodak (*i.e.*, Collins) ink. This adds another cost to customers. Ten to fifteen percent of refurbished printheads never work; without a warranty Kodak will impose a refurbishment charge for these non-functioning printheads.

38. Kodak within the past year released a new software file to a customer, purportedly to allow testing of a certain Kodak Versamark ink. The software, when installed, prevented Collins' Versamark inks from running on that printer.

39. Kodak has attempted to force customers into entering long-term exclusive dealing agreements for the purchase of Kodak ink.

***Kodak's Refusal to Cease Its Unlawful Activities***

40. Collins' counsel wrote a letter to Kodak's General Counsel on September 7, 2012, asking that Kodak cease its unlawful activities.

41. Kodak's counsel did not deny Kodak was engaged in the conduct alleged, but rather attempted to justify the conduct with pretext. For example, Kodak claimed that its new, punitive surcharges for refurbishing printheads used with "non-Kodak approved inks" were based upon safety and quality concerns that "reflect the increased cost to Kodak of performing refurbishing services on print heads that have run non-approved ink." This is clearly pretextual. First, Kodak failed to explain why it would suddenly cost more as of May 3, 2012 for it to sell refurbished printheads used with Collins-branded ink than it had during the more than twenty years Collins previously sold Versamark ink. Second, neither Kodak nor its predecessor ever reported any increased cost associated with refurbished printheads that had used Collins ink in the 20-plus years Collins has been supplying Versamark ink for Versamark printheads. For years, Kodak sold Collins ink without ever testing it for any quality, reliability or safety reasons.

42. The pretextual nature of Kodak's justifications is further highlighted by its conduct following Collins' termination of the agreement. Collins ink was immediately "non-approved," yet, upon information and belief, Kodak continued to sell its existing inventory of ink manufactured by Collins. Collins ink purportedly raised "safety" and "quality" concerns as of May 3, 2012, yet where Kodak was unable to produce a particular ink to the requirements of a customer after that date, it granted exceptions for use of what it falsely termed "unsafe" and "poor quality" Collins ink.

43.     Following Kodak's pretextual justifications for its anticompetitive and unlawful activity, Collins continued to seek a cessation of Kodak's illegal activity through agreement, but was unsuccessful in doing so.

***Injury to Competition***

44.     Kodak's conduct since May 3, 2012, and particularly since August 1, 2013, has harmed, and continues to harm, Collins; it has harmed, and continues to harm, customers; and it has harmed, and continues to harm, competition in the sale of Versamark printer ink.  Customers have been deprived of choice.  They have been economically coerced into buying Kodak ink despite the fact that Kodak ink offers a narrower range of products, products of lower quality and reliability, and products generally of a higher price.

## CLAIMS FOR RELIEF

### Cause of Action No. 1:
### Sherman Act, Section 1: Unlawful Tying (15 U.S.C. § 1)

45.     Collins realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46.     Kodak Versamark customers are significantly "locked-in" to Kodak.  The printers each cost in the hundreds of thousands of dollars.  They are often specifically conformed to presses that cost in the millions of dollars.  Many of Collins' commercial customers have numerous Versamark printers that have been in use since the early to mid-1990's.  The switching cost in terms of both time and expense are very high.

47.     Refurbished printheads for Versamark printers and ink for Versamark printers are separate products each facing a distinct demand.  The two have been sold separately for years.  Kodak has substantial market power in the market for refurbished printheads for Versamark

printers. Because of the importance of this product to owners of Versamark printers, Kodak has the ability to force Versamark printer owners to purchase Kodak's ink for Versamark printers.

48.     Kodak has tied the purchase of refurbished printheads for Versamark printers to the purchase of ink for Versamark printers, in violation *per se* of Section 1 of the Sherman Act. In the alternative, the conduct is unlawful under the rule of reason, in that any purported pro-competitive justification for the tie is pretextual or substantially outweighed by the anticompetitive effects. Moreover, any purported pro-competitive justification can be achieved through alternative means less restrictive of competition.

49.     Kodak continues to engage in these practices. The tying product is refurbished printheads; the tied product is ink. The relevant geographic market is worldwide.

50.     Kodak has 100% of the market for the tying product – refurbished printheads – and has economic and market power over that tying product. It can and has raised prices at will, with no loss of customers.

51.     Despite high profit margins, there has been no outside entry into the tying market. There are significant barriers to entry. Potential entrants face a market established by Kodak, with entrenched customer relations, and large technological hurdles to overcome.

52.     Collins has taken steps to enter the tying market, but it will take time, and Collins may be driven out of all Versamark-related markets by Kodak's anticompetitive actions before it has a chance to provide any competition for Kodak in the tying market. In addition, Kodak has claimed that its proprietary rights cannot be duplicated and has, upon information and belief, threatened to shut Collins refurbishment business down if Collins is able to enter the market. On information and belief, this threat is premised on Kodak asserting, or threatening to assert, that

Collins' activities related to the refurbishment and sale of Versamark printheads violates Kodak's proprietary rights.

53.     Kodak has economically coerced customers to use the tied product – Kodak ink for Versamark printers – by charging dramatically increased prices for refurbished printheads. This new and unexpected policy was instituted after the termination of Kodak's contract with Collins, and after customers had already been locked in to Versamark printers. Despite an often-expressed customer preference for Collins, it is economically infeasible for Versamark customers to continue to use Collins ink and pay the higher cost to acquire Versamark refurbished printheads from Kodak.

54.     Kodak's tying has substantially foreclosed competition in the tied product, has significantly harmed competition on the merits, and has interfered with customer choice. There is a substantial threat that, left unchecked, Kodak's actions will allow it to unlawfully maintain market power in the tying market and obtain a monopoly in the tied market.

55.     Kodak's tying has affected a not insubstantial amount of interstate commerce in the market for Versamark ink inasmuch as millions of dollars of Versamark ink shipped in interstate commerce has been affected.

56.     As a direct and proximate result of Kodak's unlawful tying, competition in the relevant market has been unreasonably restrained, and Collins has suffered antitrust injury, with damages in an amount to be determined at trial.

<u>Cause of Action No. 2:</u>
**Sherman Act, Section 2: Attempted Monopolization (15 U.S.C. § 2)**

57.     Collins realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

58.     Kodak currently controls more than half of the market for Versamark ink and has demonstrated a dangerous probability of achieving monopoly power in this relevant market. This dangerous probability is demonstrated by defendant Kodak's high and increasing market share, by Kodak's tying, and by Kodak's misleading communications regarding Kodak's and Collins' Versamark ink.  Defendant dominates this market through the unlawful conduct described above, to the detriment of consumers and competition.

59.     Kodak's actions demonstrate a specific intent to monopolize the Versamark ink market.

60.     Kodak's attempt to monopolize has had a substantial effect on the shipment of Versamark ink in interstate commerce.

61.     As a direct and proximate result of Kodak's attempted monopolization, competition in the relevant market has been unreasonably restrained, and Collins has suffered antitrust injury, with damages in an amount to be determined at trial.

**Cause of Action No. 3:**
**Lanham Act, Section 43(a); Unfair Competition (15 U.S.C. § 1125)**

62.     Collins realleges and incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63.     Kodak's false and misleading factual assertions in its public comments and commercial advertising, as described above, are deceptive and misrepresent the cost, nature, characteristics and qualities of Kodak's and Collins' respective Versamark ink products.  Such statements are material, are literally false and are also likely to mislead customers about the respective cost, nature, characteristics and qualities of these products.

64. By making these false and misleading factual assertions in connection with the sale of competing goods in interstate commerce, Kodak has engaged in unfair competition in violation of 15 U.S.C. § 1125(a).

65. Kodak's Lanham Act violations have proximately caused damage to Collins in an amount to be determined at trial.

**Cause of Action No. 4:**
**Deceptive Trade Practices (R.C. § 4165.01 *et seq.*).**

66. Collins realleges and incorporates by reference paragraphs 1 through 65 as if fully set forth herein.

67. Kodak's false and misleading factual assertions in its public comments and commercial advertising, as described above, are deceptive and misrepresent the cost, nature, characteristics and qualities of Kodak's and Collins' respective Versamark ink products. Such statements are material, are literally false and are also likely to mislead customers about the respective cost, nature, characteristics and qualities of these products.

68. By making these false and misleading factual assertions in connection with the sale of competing goods in interstate commerce, Kodak has engaged in unfair competition in violation of R.C. § 4165.01 *et seq.*

69. Kodak's violations of Ohio's Deceptive Trade Practices Act have proximately caused damage to Collins in an amount to be determined at trial.

**Cause of Action No. 5:**
**Defamation**

70. Collins realleges and incorporates by reference paragraphs 1 through 69 as if fully set forth herein.

16

71.     Kodak has defamed Collins.  As more fully described above, it has issued false statements; these statements are defamatory – tending to injure Collins in its trade; these false statements were widely published both publicly and directly to Versamark ink customers; Collins has been injured; and Kodak's actions were undertaken with the requisite degree of fault.

72.     Kodak's defamation has proximately caused damage to Collins in an amount to be determined at trial.

**Cause of Action No. 6:**
**Tortious Interference with Prospective Contractual Relations**

73.     Collins realleges and incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74.     Collins, on an ongoing basis, has contracts to supply specialized ink to many commercial customers for use in Kodak Versamark printers.

75.     Kodak knows of the existence of Collins supply contracts with its commercial customers.  Prior to May 2, 2012, those contracts were processed through Kodak.  After May 2, 2012, Kodak knew that the customers' only source for ink aside from Kodak was Collins.

76.     Kodak wrongfully, intentionally, without justification and with malice caused and persuaded one or more commercial customers not to enter into or continue a prospective business relation, or prevented Collins from acquiring or continuing the prospective relation.

77.     The acts of tortious interference are more fully described above, but include false and defamatory statements, and illegal and anticompetitive actions.

78.     By reason of the foregoing acts and conduct of Kodak, Kodak intentionally interfered with Collins' prospective contractual relations.

79.     Kodak's tortious interference has proximately caused damage to Collins in an amount to be determined at trial.

**Cause of Action No. 7:**
**Declaratory Judgment Regarding Proprietary Rights**

80.     Collins realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

81.     Collins is attempting to mitigate the effects of Kodak's unlawful tying by entering the market for refurbished printheads.

82.     Upon information and belief, at a December 2013 meeting in Rome, Italy, Kodak representatives told a customer that Kodak would stop Collins' entry into the Versamark refurbished printhead market.  This is consistent with an internal Kodak email from November 2012 that indicated "experts" said Collins would not be able to provide completely refurbished printheads because the orifice and charge plates are a Kodak proprietary product, and the alignment of the printhead requires a special machine possessed only by Kodak.  It is also consistent with the position taken by Kodak in a February 2013 powerpoint presentation that refurbishment requires replacement of Kodak proprietary parts for which there are no substitutes.  The meeting occurred after Kodak learned details of Collins' efforts in relation to providing Versamark refurbished printheads.  These representations by Kodak have created a substantial controversy between Kodak and Collins, who are parties having adverse legal interests.  The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

83.     Kodak does not have any proprietary rights related to Versamark refurbished printheads that it can lawfully assert Collins is violating or misappropriating, directly or indirectly, in connection with Collins' refurbishing of printheads.  This would include not only Collins' repairs, but also Collins' making or having made components for use in refurbished printheads.  To the extent Kodak has any proprietary rights in or related to Versamark

18

printheads, Collins is not using these rights, or they are invalid or unenforceable.  Given Kodak's stated position with respect to Collins' efforts to enter the market for Versamark refurbished printheads, Collins is entitled to a declaration to the effect that it has not violated and is not violating any valid and enforceable Kodak proprietary rights.

84.     Accordingly, an actual and justiciable controversy has arisen and exists between Collins and Kodak relating to the non-violation of any alleged Kodak proprietary rights in or related to Versamark printheads.  Collins seeks a judicial declaration of the respective rights and duties of the parties herein.  Such a determination and declaration is necessary and appropriate at this time to enable the parties to ascertain their respective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Collins prays for relief against Kodak as follows:

i.     That Kodak be permanently enjoined from tying the sale of its Versamark ink with the sale of Versamark refurbished printheads.  Specifically, that Kodak be enjoined from charging customers more for refurbished printheads where Collins Versamark ink is used;

ii.     That Kodak be permanently enjoined from enforcing or attempting to enforce any contractual provision or restriction increasing the cost of refurbished printheads for Kodak Versamark customers using Versamark ink from Collins;

iii.     That Kodak be permanently enjoined from refusing to provide, or delaying the provision of, refurbished printheads to customers where Collins Versamark ink is used, and to provide such printheads on the same terms and conditions as where Kodak Versamark ink is used, including preventing Kodak from voiding customers' warranties where Collins Versamark ink is used;

      iv.    That Kodak be permanently enjoined from further actions in support of the anticompetitive actions set forth above, and that Kodak be mandated, within sixty days from entry of this injunction, to:

      a.    Provide written notice to each of its Versamark customers who have purchased Versamark refurbished printheads within the past year by mailing to each such customer a copy of this injunction together with written notice that this injunction has been entered and is in full force and effect, and that all existing contracts or agreements with Kodak, and all policies of Kodak, should be deemed revised to the extent required to comply with this injunction;

      b.    Include in this notice a statement that each such customer is free and privileged to use Versamark ink with refurbished printheads whether or not the ink is manufactured by Kodak.

      c.    File with the court, and serve on the plaintiff, a certificate setting out Kodak's compliance with this injunction.

      v.    That Kodak be enjoined from making false or deceptive statements regarding the cost, nature, characteristics and qualities of Kodak's and Collins' respective Versamark ink products, and that Kodak be mandated to take corrective action to notify customers and the public of the truth regarding Kodak's prior statements; and

      vi.    That Kodak be enjoined from interfering with current or prospective contractual relations by disparaging, or otherwise improperly encouraging or causing customers not to purchase, Collins Versamark ink.

      vii.    That Kodak pay Collins compensatory damages in an amount to be determined at trial, trebled as permitted by law;

      viii.    That Collins be adjudged and decreed not to have violated or misappropriated any valid proprietary rights of Kodak with respect to Collins entry into the market for Versarmark refurbished printheads, or Collins' efforts to refurbish such printheads;

ix. That Kodak pay Collins' reasonable attorneys' fees and costs; and

x. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ W. B. Markovits*
W. B. Markovits (0018514)
Paul M. De Marco (0041153)
Christopher D. Stock (0075443)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DeMARCO, LLC
119 E. Court St., Suite 530
Cincinnati, Ohio 45202
(513) 651-3700
bmarkovits@msdlegal.com
pdemarco@msdlegal.com
cstock@msdlegal.com
tcoates@msdlegal.com

*Counsel for Collins Inkjet Corporation*

Of Counsel:

Donald J. Rafferty
COHEN, TODD, KITE & STANFORD LLC
250 E. Fifth St., Suite 2350
Cincinnati, Ohio 45202
(513) 333-5243
drafferty@ctks.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2014 a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


*/s/ W. B. Markovits*
W.B. Markovits (0018514)
MARKOVITS, STOCK & DEMARCO, LLC